FILED
2013 JAN 23 PM 2:52
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2012 Grand Jury

CR13-0052

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    )<br>          Plaintiff, )<br>    )<br>     v. )<br>    )<br>SUSANNA ARTSRUNI, )<br>  aka "Mary," )<br>  aka "Rose," and )<br>ERASMUS KOTEY, )<br>    )<br>          Defendants. )<br>_____ ) | CR _____<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 1956(a)(1)(B)(i): Money Laundering; 18 U.S.C. § 2(b): Causing an Act to Be Done; 18 U.S.C. § 3147: Penalty for Committing an Offense While on Pre-Trial Release] |

The Grand Jury charges:

COUNTS ONE THROUGH SEVEN

[18 U.S.C. § 1347]

A.  INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

The Medicare Program

1.   Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who

were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

2. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each Medicare beneficiary was given a Health Identification Card containing a unique identification number ("HICN").

3. Durable medical equipment ("DME") supply companies, physicians, physician assistants ("PA"), and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

Midvalley Medical Supply

4. Midvalley Medical Supply ("Midvalley") was a DME supply company located at 15246 Saticoy Street, Van Nuys, California 91405, within the Central District of California.

5. Midvalley was a Medicare provider from on or about September 13, 2007, until on or about October 27, 2009.

6. Defendant SUSANNA ARTSRUNI, also known as ("aka") "Mary," aka "Rose" ("defendant ARTSRUNI"), was enrolled with Medicare as the owner and managing employee of Midvalley from on or about September 13, 2007, until on or about July 7, 2008.

7. Midvalley used Quality Medical Billing to submit its Medicare billing between on or about November 16, 2007, and in or about February 2008.

8. Between on or about November 16, 2007, and on or about February 14, 2008, Midvalley submitted claims to Medicare for approximately $104,363, and Medicare paid Midvalley approximately

2

$71,046.45 for those claims.

### The Vermont Medical Clinic

9. Between on or about October 1, 2007, and in or about February 2008, defendant ARTSRUNI, using the names "Mary" and "Rose," also worked at a clinic located at 866 North Vermont Avenue, Los Angeles, California 90029, within the Central District of California (the "Vermont Clinic"), as an office manager.

10. Between on or about November 1, 2007, and in or about February 2008, defendant ERASMUS KOTEY ("defendant KOTEY") was enrolled with Medicare as a PA and employed by the Vermont Clinic.

11. The Vermont Clinic billed defendant KOTEY's services to Medicare under the Medicare provider number belonging to Dr. C.S., a licensed physician who was the medical director for the Vermont Clinic.

12. Between on or about October 1, 2007, and in or about February 2008, the Vermont Clinic billed Medicare more than $428,819 for services allegedly provided to Medicare beneficiaries at the clinic. Medicare paid the Vermont Clinic approximately $272,930.72 for those claims.

### Medicare Provider Reimbursement Procedures

13. CMS contracted with private insurance companies to certify providers for participation in the Medicare program and monitor their compliance with Medicare standards, to process and pay claims, and to perform program safeguard functions, such as identifying and reviewing suspect claims.

14. Noridian Administrative Services ("Noridian") processed

3

and paid Medicare DME claims in Southern California.

15. The National Health Insurance Company ("NHIC") processed and paid Medicare claims by physicians in Southern California.

16. To obtain payments from Medicare as reimbursement for services provided to Medicare beneficiaries, a provider first had to apply for and obtain a provider number. By signing the provider application, the provider agreed to (a) abide by Medicare rules and regulations and (b) not submit claims for payment to Medicare knowing they were false or fraudulent or with deliberate ignorance or reckless disregard of their truth or falsity.

17. If Medicare approved a provider's application, Medicare assigned the provider a Medicare provider number, which enabled the provider to submit claims to Medicare for services rendered to Medicare beneficiaries.

18. Most providers, including Midvalley and the providers associated with the Vermont Clinic, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

19. Medicare reimbursed providers only for services that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician, and were provided in accordance with Medicare regulations and guidelines that governed whether a particular service would be reimbursed by Medicare.

20. Medicare required a claim for Medicare reimbursement of services to set forth, among other things, the beneficiary's

name, HICN, and diagnosis; the Current Procedural Terminology ("CPT") code for the service provided to the beneficiary; the date when and location where the service was provided; and the name and physician identification number of the physician who ordered the service.

21. DME providers like Midvalley were only entitled to Medicare reimbursement for DME that was medically necessary to the treatment of a beneficiary's illness or injury, was prescribed by a beneficiary's physician, and was provided in accordance with Medicare regulations and guidelines that governed whether a particular item or service would be reimbursed by Medicare.

22. Medicare required a claim for Medicare reimbursement of DME to set forth, among other things, the beneficiary's name and HICN, the type of DME provided to the beneficiary, the date the DME was provided, and the name and unique physician identification number of the physician who prescribed or ordered the DME.

B. THE SCHEME TO DEFRAUD

23. Beginning in or about November 2007, and continuing until in or about February 2008, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARTSRUNI and KOTEY, together with others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely, Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain

5

money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

24. The fraudulent scheme operated, in substance, in the following manner:

    a. Co-schemers would recruit and bring Medicare beneficiaries to the Vermont Clinic, often with the promise of free, medically unnecessary DME. Some of these beneficiaries lived hundreds of miles from the Vermont Clinic.

    b. Once at the Vermont Clinic, the beneficiaries presented their personal information, including their Medicare identification cards and HICNs. Some beneficiaries saw individuals they believed to be doctors (though not their primary care physicians), while others did not see anyone they believed to be a medical professional.

    c. At defendant ARTSRUNI's direction at the Vermont Clinic, defendant KOTEY prescribed DME and ordered diagnostic tests, including nerve conduction tests and ultrasounds, that were not medically necessary for these Medicare beneficiaries. Defendant KOTEY often did not discuss the need for or nature of these tests with the beneficiaries or follow-up with them regarding the test results.

    d. As defendants ARTSRUNI and KOTEY knew would happen and intended to happen, the Vermont Clinic submitted claims to Medicare for services ordered and allegedly provided by defendant KOTEY under the Medicare provider number of Dr. C.S., the Vermont Clinic's medical director, even though, as defendants ARTSRUNI

and KOTEY well knew, these services were not medically necessary and were sometimes never even provided to the beneficiaries.

   e. Defendant ARTSRUNI had access to the patient files from the Vermont Clinic and used the patient information obtained from the Medicare beneficiaries, as well as the DME prescriptions written by defendant KOTEY, to submit false and fraudulent claims to Medicare through her DME company, Midvalley. As defendant ARTSRUNI well knew when she submitted, and caused to be submitted, the claims to Medicare, the claims were primarily for motorized wheelchairs and orthotics that were not medically necessary and were sometimes not even provided to the beneficiaries.

   f. Defendant ARTSRUNI directed that the Medicare payments be deposited into a Midvalley bank account at Washington Mutual Bank (the "Midvalley Bank Account") that she controlled.

## C. EXECUTIONS OF THE FRAUDULENT SCHEME

  25. On or about the dates set forth below, within the Central District of California, and elsewhere, defendants ARTSRUNI and KOTEY, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme to defraud described above, knowingly and willfully submitted and caused to be submitted to Medicare the following false and fraudulent claims:

| Count | Approx. Date Claim Submitted | Beneficiary and Service | Approx. Amount Claimed | Claim No. |
|---|---|---|---|---|
| ONE | 1/24/2008 | D.B. - Back, knee, and elbow orthotics | $260.00 | 8024855171000 |

7

| Count | Approx. Date Claim Submitted | Beneficiary and Service | Approx. Amount Claimed | Claim No. |
|---|---|---|---|---|
| TWO | 1/24/2008 | P.A. - Motorized wheelchair and accessories | $5,756.00 | 8024855169000 |
| THREE | 1/24/2008 | P.A. - Wrist orthotic | $62.00 | 8024855170000 |
| FOUR | 1/24/2008 | M.R. - Motorized wheelchair and accessories | $5,756.00 | 8024855176000 |
| FIVE | 1/24/2008 | M.R. - Elbow orthotic | $68.00 | 8024855177000 |
| SIX | 2/14/2008 | A.M. - Motorized wheelchair and accessories | $5,756.00 | 8045840824000 |
| SEVEN | 2/14/2008 | A.M. - Back and ankle orthotics | $274.00 | 8045840825000 |

## COUNTS EIGHT AND NINE

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b), 3147]

26. The Grand Jury hereby repeats and realleges paragraphs 1 through 22 and 24 of this Indictment as if fully set forth herein.

27. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant ARTSRUNI, together with others known and unknown to the Grand Jury, knowing that the property involved in each of the financial transactions described below represented the proceeds of some form of unlawful activity, conducted and willfully caused others to conduct the following financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, namely, health care fraud, in violation of 18 U.S.C. § 1347, knowing that each of the transactions was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| Count | Date | Financial Transaction |
|---|---|---|
| EIGHT | 3/6/2008 | Negotiation of check number 172, drawn on the Midvalley Bank Account, in the amount of $6,500.00, payable to Univision Group, Inc. |
| NINE | 3/6/2008 | Negotiation of check number 173, drawn on the Midvalley Bank Account, in the amount of $7,249.00, payable to Pegas Group, Inc. |

PENALTY FOR OFFENSE COMMITTED WHILE ON PRE-TRIAL RELEASE

27. It is further alleged that at the time of the offenses charged in Counts Eight and Nine, defendant ARTSRUNI was released

9

under Title 18, United States Code, Chapter 207. Specifically, defendant ARTSRUNI was released pursuant to an order dated February 29, 2008, from the United States District Court for the Central District of California in the criminal case of <u>United States v. Susanna Artsruni</u>, case no. CR 08-209-CAS, which order notified defendant ARTSRUNI of the potential effect of committing an offense while on pretrial release.

A TRUE BILL

　/s/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD R. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

RANEE A. KATZENSTEIN
Assistant United States Attorney
Deputy Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Major Frauds Section